ELECTRIC BOOT & SHOE FINISHING CO. v. LITTLE et al.

(Circuit Court, D. Massachusetts. June 18, 1896.)

No. 465.

**1. PROCESS PATENT—DECEPTIVE SPECIFICATIONS.**
Where a patent for a process for finishing and polishing the soles and heels of boots and shoes described it as consisting of dyeing the parts black, treating them with wax or other waterproof compound, and polishing the same with a rapidly moving "yielding surface," formed of cotton cloth or chamois skin, covering a bed of felt "or any other suitable material," *held*, that the patent was void because of an implied purpose to deceive the public; it appearing that, at the time of his application, the patentee considered that the dye used should be waterproof, and that the yielding surface used in polishing must be an inflated air cushion, neither of which facts was disclosed by the specifications.

**2. SAME—BURNISHING BOOTS AND SHOES.**
The Crocker reissue, No. 11,144, for blackening and burnishing boots and shoes, is void, because the specifications do not disclose the whole truth in relation to the invention.

This was a suit in equity by the Electric Boot & Shoe Finishing Company against Alexander E. Little and others for alleged infringement of a patent for blackening and burnishing boots and shoes.

Chas. A. Taber, for complainant.

James H. Young and Oliver R. Mitchell, for defendants.

CARPENTER, District Judge. This is a bill in equity to restrain an alleged infringement of the first claim of reissue letters patent No. 11,144, issued February 10, 1891, to William W. Crocker, for blackening and burnishing boots and shoes. The claim is as follows:

(1) The improvement in the art of polishing and finishing sole and heel edges and other parts of boots or shoes, which consists in dyeing the said parts or surfaces black and treating the said surfaces with wax or other resinous or waterproof compound and polishing the same by contact with a rapidly moving yielding surface, substantially as described.

The process in use before this invention was to blacken the leather with ink, the sediment of which was fixed to the fiber of the leather by buffing, and then by rubbing the leather with a hard heated surface. In the use of a dye, the surface of the leather is left smooth and may be polished by an instrument having a soft, yielding surface. I do not find in the record evidence of the use of this process before the invention here patented.

It is objected that the patent does not sufficiently describe the process; and on this point the respondents strongly argue that the materials necessary to the process were not commonly known, and hence that the manner of preparing them should have been described in the patent. I have finally reached the conclusion that the materials used in the patented process were sufficiently known to those familiar with the art as it stood at the time of the invention, so that the patentee is not called on to describe the methods of preparing them. Those familiar with the art, I am persuaded,

would understand the nature of the materials required, although it is true as disclosed by the evidence that there was at that time a practical difficulty in obtaining a supply in the market.

I am of opinion, however, that the specification was, for the purpose of deceiving the public, made to contain less than the whole truth relative to the invention and hence that the patent must be held to be invalid.    Rev. St. § 4920.    The patentee had discovered previously to his application that the dye used should be waterproof, and that the yielding surface used in polishing should be an inflated air cushion.    The use of a waterproof dye, he testifies, is "an important feature"; and as to the air cushion, he testifies that it "is necessary to be practical," and that without this "it would not be my process."    The specification, however, contains no reference to these requirements.    The necessity of a waterproof dye is hardly even suggested, and the polishing surface is described as formed of cotton cloth or chamois skin, covering a bed of "felt or any other suitable material."    Since the great importance of the waterproof quality in the dye was well understood by the inventor, as well as the absolute necessity to his process of a certain specific yielding surface, I must hold that the purpose to deceive the public is necessarily implied from his failure even to suggest these requirements.

The bill will be dismissed with costs to the respondents.